UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHNSON & JOHNSON VISION CARE, INC.,

          Plaintiff,

-v-

No. 04 Civ. 7369 (LTS)(HBP)

CIBA VISION CORPORATION,

          Defendant.

## OPINION AND ORDER

APPEARANCES:

KRAMER LEVIN NAFTALIS & FRANKEL LLP
  By: Harold P. Weinberger, Esq.
     Jonathan M. Wagner, Esq.
     Norman C. Simon, Esq.
919 Third Avenue
New York, NY 10022

*Attorneys for Plaintiff*

McDERMOTT WILL & EMERY LLP
  By: Charles W. Work, Esq.
     Thomas P. Steindler, Esq.
600 Thirteenth Street, N.W.
Washington, DC 20005
     -and-
  By: Chryssa V. Valletta, Esq.
50 Rockefeller Plaza
New York, New York 10020

*Attorneys for Defendant*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiff Johnson & Johnson Vision Care, Inc. ("Plaintiff" or "JJVC") has brought the instant false advertising action pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), Sections 349 and 350 of the New York General Business Law, and the common law of unfair competition, to challenge promotional materials disseminated by Defendant CIBA Vision Corporation ("Defendant" or "CIBA") in connection with CIBA's launch of its $O_2$OPTIX contact lenses. The Court has jurisdiction of Plaintiff's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and of Plaintiff's New York state law claims under 28 U.S.C. §§ 1332, 1338(b), and 1367.

By an Opinion and Order issued on December 10, 2004 (the "December 2004 Order"), and supplemented by a further Order issued on March 2, 2005, the Court granted Plaintiff a permanent injunction against Defendant in connection with certain advertising activities.

Plaintiff now seeks to hold Defendant in contempt for violation of the December 2004 Order. Defendant moves for partial summary judgment as to Plaintiff's claim for damages and attorneys' fees in connection with the events that were the subject of that Order. Additionally, both parties move in limine to exclude at trial certain expert testimony and related reports. The Court has considered thoroughly all of the parties' submissions and arguments. For the following reasons, Plaintiff's motion for contempt is denied, Defendant's motion for partial summary judgment is denied, and both motions in limine are denied.

## BACKGROUND

Plaintiff filed the Complaint in the instant action on September 15, 2004. In

connection with its claims of false advertising, Plaintiff seeks monetary damages, including Defendant's profits that are attributable to those false claims, as well as attorneys' fees. (Compl. ¶ 47.) On September 20, 2004, Plaintiff moved, by application for an Order to Show Cause, for a preliminary injunction and an order permitting expedited discovery. At a conference held on September 22, 2004, the Court issued an order granting Plaintiff's request for expedited discovery and directing that the hearing on JJVC's motion for a preliminary injunction be consolidated with a trial on the merits of the action insofar as injunctive relief was sought.[1] The trial took place on October 18-21, 2004.

On December 10, 2004, the Court issued its findings of fact and conclusions of law, in which it concluded that Defendant had engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and granted Plaintiff's request for permanent injunction in connection with advertising activities involving false claims of oxygen transmissability and consumer preference. Plaintiff subsequently sought an order enjoining, as violative of the December 2004 injunction, certain advertising claims made by Defendant after the December 2004 Order was issued. After a hearing, the Court found Defendant in violation of the December 2004 Order and, on March 2, 2005, issued a supplemental order which clarified and enforced the prior permanent injunction. The Court assumes familiarity with the facts and legal conclusions set forth in its December 2004 and March 2005 Orders. The specifics of the post-December 2004 advertising controversy are discussed in context, infra.

---

[1] Such consolidation is authorized by Fed. R. Civ. P. 65(a)(2).

## DISCUSSION

*Motion for Contempt*

Plaintiff seeks a finding of contempt and related monetary relief, including attorneys' fees, in connection with the Court's March 2005 determination that consumer preference advertising claims made by Defendant following the Court's December 2004 Order violated that Order. To hold a party in civil contempt, a court must find that "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." New York State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989). A plaintiff need not establish that the violation was willful for a finding of contempt. Paramedics Electromedicina Comercial, LTDA v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 655 (2d Cir. 2004). Upon a finding of contempt, a court may also award monetary sanctions "to compensate the plaintiff for injury caused by past noncompliance or to prevent continued disobedience." Manhattan Indus., Inc. v. Sweater Bee By Banff, Ltd., 885 F.2d 1, 5 (2d Cir. 1989).

The Court's December 2004 Order enjoined Defendant from "stating or otherwise representing in its promotional activities, on the basis of its consumer preference study conducted from January 6, 2004, to February 27, 2004, that 75% of the participants in that study preferred O$_2$OPTIX over ACUVUE ADVANCE." (December 10, 2004, Op. and Order at 31.) Following the issuance of that Order, Defendant disseminated advertising that claimed, based on the same study, that "75% of lens wearers selected O$_2$OPTIX over ACUVUE ADVANCE.*" The asterisked footnote, which was in fine print following the next sentence of the advertisement,

read: "In a double-masked, force choice, contralateral study where all patients wore both lenses, 33% of patients selecting O$_2$OPTIX (and 40% of patients selecting ACUVUE ADVANCE) based the selection on random preference." (Thomas P. Steindler Decl. in Opp. to Pl.'s Mot. for Contempt, Ex. A.) Plaintiff, contending that the advertisement violated the December 2004 Order, unsuccessfully demanded that Defendant cease using the new advertisement. Plaintiff thereupon made an application to this Court for remedial relief in relation to the permanent injunction. On March 2, 2005, after receiving a submission and hearing arguments of counsel, the Court issued a further order "clarif[ying] and enforc[ing]" the December 2004 Order. The March 2, 2005, Order reads in pertinent part as follows:

> it is hereby
>
> ORDERED, that Defendant CIBA, its officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with CIBA who receive actual notice of this Order, are hereby permanently enjoined from stating or otherwise representing, explicitly or implicitly, based upon the consumer preference study conducted from January 6, 2004, to February 27, 2004, that 75% of the participants in that study preferred O2OPTIX over ACUVUE ADVANCE; and it is further
>
> ORDERED, that the Court's injunctions prohibiting CIBA from claiming that such preference was indicated by the study prohibit any claim that 75% of the participants "selected" O2OPTIX "over" ACUVUE ADVANCE, and words of similar import indicating that the study results indicate that 75% of the participants found O2OPTIX preferable to ACCUVUE ADVANCE.

Although Defendant's conduct was violative of the December 2004 Order, a finding of contempt is not appropriate here. An order of civil contempt is a "potent weapon . . .[and] is warranted only where the moving party establishes by clear and convincing evidence that the alleged contemnor violated the district court's edict" King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) (citations and quotations omitted). Any ambiguities in an order

should be read in favor of the person charged with contempt. A.V. By Versace, Inc. v. Gianni Versace, S.p.A., 87 F. Supp. 2d 281, 291 (S.D.N.Y. 2000). In the instant case, the Court is persuaded, based on the record made in connection with the enforcement application, that the December 2004 Order was not sufficiently unambiguous as to the breadth of its intended prohibitions on the use of the "75%" computation of study participants' selection of Defendant's product over Plaintiff's, and on the use of terms suggestive of a preference in connection with that figure, to support a finding of contempt. The Court notes in this connection that the challenged post-December 2004 advertisement used the word "selected" rather than the word "preferred;" the latter-term had been emphasized in the Court's December 2004 discussion of the offending language (see, e.g., December 2004 Order at 23). The Court had used the word "select" in its own description of the study's methodology (Id. at 15). The defense proffered that its "selected" iteration had been chosen carefully in an effort not to run afoul of the December 2004 Order. A contempt finding is not warranted on this record. Plaintiff's application for a contempt finding and related monetary relief are, accordingly, denied.

*Summary Judgment Motion*

Asserting that Plaintiff cannot establish what Defendant argues are essential factual predicates for Plaintiff's claims for an accounting of Defendant's profits and for attorneys' fees, Defendant seeks partial summary judgment dismissing Plaintiff's accounting and attorneys' fee demands. Because genuine issues of material fact preclude pretrial resolution of these issues, the motion is denied.

Summary judgment shall be granted in favor of a moving party where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The Second Circuit has explained that the "party against whom summary judgment is sought . . . 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration and emphasis in original)).

Upon a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a party is entitled to recover "(1) defendant's profits, (2) any damages sustained by plaintiff, and (3) the costs of the action." 15 U.S.C.A. § 1117(a) (West 2006). In this Circuit, an accounting of profits is normally available "only if 'the defendant is unjustly enriched, if the plaintiff sustained damages from the infringement, or if the accounting is necessary is to deter a willful infringer from doing so again.'" George Basch Co. v. Blue Coral, Inc., 968 F.2d 1532, 1537 (2d Cir. 1992) (quoting W. E. Bassett Co. v. Revlon Inc., 435 F.2d 656, 664 (2d Cir. 1970)). Here, Plaintiff seeks an accounting in order to recover profits as a proxy for its own damages sustained

from the infringement. (See Pl.'s Mem. in Opp'n. to Summ. Judgment at 3.) Second Circuit case law holds that, before a plaintiff can receive an accounting of a defendant's profits on this basis, the plaintiff must show willful conduct or bad faith on the part of the defendant in connection with the Lanham Act violation as well as "a general right to damages." George Basch Co., 968 F.2d at 1539-40.[2] Attorneys' fees may also be awarded in the broad discretion of the district court and in exceptional circumstances. See id. at 1542-43; 15 U.S.C. § 1117(a). In this Circuit, attorneys' fees are awarded for Lanham Act violations only if there is a showing of bad faith or fraud. Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 194 (2d Cir. 1996).

Defendant argues that it is entitled to partial summary judgment because Plaintiff cannot prove that Defendant's violations of the Lanham Act and of the Court's December 2004 injunction Order were willful or made in bad faith, and that Plaintiff is unable to demonstrate that it suffered any damages on account of Defendant's activity and thus cannot establish the requisite "general right to damages" in connection with its action to recover profits. However, when the

---

[2] Congress' 1999 amendment to the section of the Lanham Act that authorizes actions to recover the defendant's profits upon proof of a violation of section 1125(a) raises a question as to the continuing viability of the Second Circuit precedent requiring a showing of willfulness as a predicate to recovery. See 15 U.S.C.A. § 1117(a) (West 2006) (as amended, providing that such recovery may be had upon "a violation under section 1125(a) or . . . a willful violation under section 1125(c)"); compare Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc., No. 02 Civ. 3691 (DLC), 03 Civ. 707 (DLC), 2004 WL 326708, at *11 (S.D.N.Y. Feb. 23, 2004) (holding that Congress' failure to alter the language regarding section 1125(a) indicates intent to leave existing law undisturbed) with Nike, Inc. v. Top Brand Co., No. 00 Civ. 8179 (KMW)(RLE), 2005 WL 1654859, at *10 (S.D.N.Y. July 13, 2005) (holding that omission of term "willful" in relation to section 1125(a) indicates rejection of willfulness as bright-line criterion but that willfulness remains a relevant factor in analysis as to litigant's entitlement to recover defendant's profits).

record is read, as it must be on a summary judgment motion, in the light most favorable to Plaintiff, it is clear that there is sufficient evidence as to each of these issues to support a reasonable factfinder's verdict in Plaintiff's favor. For example, a reasonable factfinder could determine, on the basis of evidence that Defendant's in-house staff requested permission from Dr. Hill to use certain text regarding oxygen transmissibility, altered the text and presentation to depict 90 Dk/t as a "critical minimum" without clearing the change with the author, and refused to withdraw the advertising claim for some weeks after Dr. Hill had repudiated it, that Defendant's promulgation of that false claim was willful or done in bad faith. Nor has Plaintiff waived its opportunity to pursue the issue of bad faith in connection with its profits claim; Plaintiff merely took the position that good faith and bad faith were irrelevant in connection with the earlier, now-concluded, proceedings regarding injunctive relief.

Similarly, there remain genuine issues of material fact regarding willfulness and bad faith in connection with Defendant's use of its claim that 75% of study participants preferred, or "selected," $O_2OPTIX$ "over" Plaintiff's product. The Court has found that the preference claim is not supported by the data; further factfinding is required to weigh Defendant's claims that its actions were taken in good faith and based on reasonable interpretations of the data and of the Court's December 2004 decision. Moreover, Plaintiff has proffered evidence that at least one customer questioned the necessary level of oxygen transmissibility in connection with Plaintiff's product after Defendant's false advertising claim was disseminated, and Plaintiff has proffered expert testimony purporting to tie Defendant's offending activities to its profits. Thus, it cannot be said that a reasonable factfinder could not determine that Plaintiff has satisfied any requirement that it demonstrate a general entitlement to damages.

Accordingly, Defendant's partial summary judgment motion must be denied because Defendant is not, on the current record, entitled to judgment on these issues as a matter of law.

*Motions in Limine*

CIBA moves in limine to exclude the reports and proposed testimony of JJVC's expert, Basil Imburgia. JJVC moves in limine to exclude a portion of the testimony of CIBA's damages expert, Dr. Matthew Lynde, as well as to exclude the survey and proposed testimony of CIBA's survey expert, Phillip Johnson. For the following reasons, the Court denies both parties' motions in limine.

Under Federal Rule of Evidence 702, "[if] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702 (West 2006).

In assessing whether a witness can testify as an expert, courts have liberally construed the expert qualification requirement. United States v. Brown, 776 F.2d 397, 400 (2d Cir. 1985); Cary Oil Co., Inc. v. MG Refining & Mktg., Inc., No. 99 Civ. 1725 (VM), 2003 WL 1878246, at *1 (S.D.N.Y. Apr. 11, 2003). "[An] expert should not be required to satisfy an overly narrow test of his own qualifications." Valentin v. New York City, No. 94 Civ. 3911 (CLP), 1997 WL 33323099, at *14 (E.D.N.Y. Sept. 9, 1997) (citations and quotations omitted).

"In considering a witness's practical experience and educational background as criteria for qualification, the only matter the court should be concerned with is whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth." Id. at *14. As a result, one may be an expert solely based on one's practical experience notwithstanding a lack of professional education or one's formal education despite a lack of practical experience. Id. at *15; United States v. Angelilli, 660 F.2d 23, 39-40 (2d Cir. 1981).

In assessing the admissibility of expert testimony, the Court must determine whether testimony is relevant, that is, whether it "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," Fed. R. Evid. 401 (West 2006), see Daubert v. Merrell Dow Pharmss, 509 U.S. 579, 587 (1993), and whether the proffered testimony has a sufficiently "reliable foundation" to permit it to be considered. Daubert, 509 U.S. at 597. In making a determination of reliability, Rule 702 requires that the trial court make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93. The proponent of the evidence must demonstrate admissibility to the satisfaction of the Court under Rule 104(a) by establishing scientific or technical reliability by a preponderance of proof. See Bourjaily v. United States, 483 U.S. 171, 175-76; Falise v. Am. Tobacco Co., 258 F. Supp.2d 63, 66 (E.D.N.Y. 2000). The Daubert Court identified several factors to be considered in determining whether a proposed submission is sufficiently reliable under Rule 702. Daubert, 509 U.S. at 593. These include whether the theory or technique offered can be tested; whether it has been subjected to peer review and publication; what the known or potential rate of error is;

and whether it is generally accepted in the scientific community. Id. at 593-95. Matters of exclusion or inclusion of evidence pursuant to Rule 702 are left to the broad discretion of the trial court. See Zuchowicz v. United States, 140 F.3d 381, 386 (2d Cir. 1998).

CIBA's Motion in Limine

CIBA argues that JJVC's damages expert, Basil Imburgia ("Imburgia"), is not sufficiently qualified nor are his reports based on reliable methodology, and that consequently both his testimony and reports should be excluded at trial. CIBA argues that Imburgia's reports are unreliable principally on the grounds that there is no academic literature supporting his methodology and that he relies on incorrect assumptions. Imburgia is a certified public accountant whose reports[3] purport to calculate the revenue of CIBA's $O_2OPTIX$ lenses that is attributable to the false advertising as a proxy for the damages owed to JJVC. (Thomas P. Steindler Decl. in Supp. of Def.'s Mot. in limine, "Steindler Decl.," Exs. A and B.) After thoroughly reviewing Imburgia's reports and his qualifications, the Court finds that Mr. Imburgia is qualified to render his opinion on this subject and his methodology is sufficiently reliable to be admitted at trial.

Under the liberal standard of assessing an expert's qualifications, the Court finds that Imburgia is qualified to give his opinions concerning the marketplace impact of the false advertising claims. Imburgia has significant experience in conducting financial and economic analyses relating to products in the marketplace and has provided such expert opinions in

---

[3] Mr. Imburgia authors two reports, one dated June 1, 2005, and a supplemental report dated August 5, 2005. The second report serves as a rebuttal to the report of CIBA's expert, Dr. Matthew Lynde. (See Thomas P. Steindler Decl. in Supp. of Def.'s motion in limine, "Steindler Decl.," Exs. A and B.)

numerous cases. (See Steindler Decl., Ex. A, App. A at 3-5.) It is not important that Imburgia does not have specific training in the field of optometry or experience related to the eye care profession because his opinions involve financial rather than industry specific analysis. See TC Sys. Inc. v. Town of Colonie, N. Y., 213 F. Supp. 2d 171, 175 (N.D.N.Y. 2002) (finding that expert was qualified even though he had no practical experience in telecommunications industry because his opinions involved broader economic principles and he was sufficiently qualified in that field). The Court finds that CIBA's objections to Imburgia's qualifications go more to the weight of the testimony than to its admissibility. See Valentin v. New York City, No. 94 Civ. 3911 (CLP), 1997 WL 33323099, at *15 (E.D.N.Y. Sept. 9, 1997) ("[W]hile the threshold issue of whether a particular witness qualifies as an expert is one for the judge to determine, it is for the jury to decide what weight should be given to that testimony . . . . Thus, any challenges to an expert's skill, knowledge or credibility go to the weight, not the admissibility of the testimony.") (citations omitted).

        The Court also finds that Imburgia's reports are sufficiently reliable to be admitted at trial. On the issue of publication, it is well settled that publication is but one element of peer review and "does not necessarily correlate with reliability." Daubert v. Merrell Dow Pharms, 509 U.S. 579, 593 (1993); FDIC v. Suna Assocs., Inc., 80 F.3d 681, 687 (2d Cir. 1996). In fact, a court should not require an expert "to back his or her opinion with published studies that unequivocally support his or her conclusions." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002). As long as the expert uses reliable methods to reach his conclusion, "lack of textual support should 'go to the weight of the evidence, not its admissibility.'" Id. at 267 (quoting McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995)). Here, Imburgia has indicated that there is general literature supporting his methodology

of using another product's success as proxy for projecting the success of your product. (See Steindler Decl. Ex. C at 74.)[4] Moreover, the Court finds that any specific lack of textual authority goes more to the weight of the opinion rather than its admissibility. See McCullock, 61 F.3d at 1044 (finding that lack of textual authority for expert's opinion goes to weight of testimony rather than admissibility). To the extent CIBA argues that the behavioral assumptions upon which he was instructed to base his economic analysis are ill-formed or inconsistent with other evidence, such arguments again go to the weight of the testimony rather than the quality of the expertise or the reliability of the economic methodology.

CIBA also argues that Imburgia "analysis makes no effort to account for major variables [between the two companies' contact lenses,] including market share at the time of the launch, price differences, oxygen performance differences, and wear regimes." (Def.'s Reply Mem. in Supp. of Mot. in limine, at 9.) After reviewing his reports, the Court finds, however, that Imburgia accounts for these variables in his analysis sufficiently to meet the threshold of reliability for admissibility at trial. In this connection, the Court finds CIBA's objections to the reports and underlying methodology go more to the weight of the report rather than its admissibility. See McCullock, 61 F.3d at 1044 (noting that disputes as to faults in expert's methodology go to weight not admissibility of his testimony); Latino Officers Ass'n v. City of New York, No. 99 Civ. 9568 (LAK), 2003 WL 21638165, at *2 (S.D.N.Y. July 14, 2003) (finding that argument on reliance on incorrect assumptions goes to weight of report rather than admissibility); Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary

---

[4] Interestingly, any argument as to lack of publication would also apply to CIBA's expert Dr. Matthew Lynde because his report also lacks citations to academic studies supporting his methodology. (See Harold P. Weinberger Decl. in Supp. of Pl.'s Mot. in limine, Ex. D.)

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, the Court denies CIBA's motion in limine to exclude the testimony and reports of Imburgia.

JJVC's Motion in Limine

1. Testimony and Report of Matthew Lynde

JJVC argues that a portion of the report, and the accompanying testimony, of CIBA's expert, Dr. Matthew Lynde ("Lynde"), should be excluded because the analysis in connection with cost deductions does not comport with relevant case law. Lynde provides a rebuttal report to JJVC's expert, Imburgia, as to the amount of profits earned by CIBA on the sale of $O_2$OPTIX contact lenses. Lynde makes a number of deductions from the profit margin, concluding that Mr. Imburgia greatly exaggerates the amount of profits earned on the product. (See Harold P. Weinberger Decl. in Supp. of Pl.'s Mot. in limine, Ex. D.)

The Court finds that Lynde's analysis does comport with this Circuit's case law and is sufficiently reliable to be admitted at trial. In assessing a defendant's profits under 15 U.S.C. Section 1117(a), a defendant has the burden to show any reductions or costs. See 15 U.S.C. § 1117(a). Any overhead costs that bear a nexus to the production or sale of the goods may be deducted in assessing overall profits. See Hamil Am. Inc. v. GFI Inc., 193 F.3d 92, 107 (2d Cir. 1999). A party must show that the costs were related to "the production, distribution or sale of the infringing product." Id. (citations omitted). After thoroughly reviewing Lynde's report, the Court finds that Lynde's deductions in connection with his assessment of profits do bear a sufficient nexus to the $O_2$OPTIX product to make the analysis appropriately admissible.. The Court finds that JJVC's objections to the report in connection with these deductions go to

the weight of the Lynde report rather than its admissibility.

JJVC also objects that Lynde should not have deducted transfer fees because these fees were paid to other corporate affiliates within the CIBA company. The Court, however, does not find that this deduction so affects the reliability of the report as to preclude its admissibility at trial. It appears to be undisputed that Defendant CIBA Vision Corporation is a United States legal entity with numerous international sister companies, which are all part of the global Novartis Corporation headquartered in Switzerland. CIBA proffers that because most of the product is manufactured at its overseas affiliates, CIBA corporation has to pay a transfer fee in accordance with United States tax law. (See Def.'s Opp. to Mot. in limine Seeking to Exclude Lynde Test. at 7, citing Bausch & Lomb, Inc. v. Comm'r, 933 F.2d 1084 (2d Cir. 1991) (discussing transfer tax under 26 U.S.C. §482).)[5] Because the transfer fees are at least arguably a reasonable deduction from CIBA's revenue, JJVC's objection, goes more to the weight of the analysis rather than its admissibility. JJVC is free to argue to the fact-finder the relative fairness of this deduction in calculating CIBA profits. Accordingly, JJVC's motion to exclude a portion of Lynde's testimony and report is denied.

2. Survey of Phillip Johnson

JJVC also seeks to exclude a survey conducted by CIBA's expert, Philip Johnson ("Johnson"), on the impact of the false advertising, on the grounds that Johnson's methodology is fundamentally flawed. Johnson, a market research consultant, conducted a survey of eye care

---

[5] CIBA argues that if Lynde were to have used the global corporation rather than the United States corporation (as Plaintiff seems to urge), while this tax would not be deducted, the overhead costs would be greater as that entity would be the consolidated corporation as opposed to the United States subsidiary. (See Def.'s Opp. to Mot. in limine Seeking to Exclude Lynde Test. at 8.)

professionals in June 2005 to establish that "there is no demonstrable impact in the marketplace to ACUVUE ADVANCE that can be attributed in any way to CIBA's prior advertising relating to a critical minimum Dk/t level or a consumer preference claim." (Harold P. Weinberger Decl. in Supp. of Pl.'s Mot. in limine, Ex. A at 22.) Johnson conducted telephone interviews with eye care professionals who would have been targeted by CIBA to receive the false advertising in the fall of 2004. (See id. at 4.) JJVC principally argues that, because the survey was conducted in June 2005, it will not assist the fact-finder in ascertaining the prescribing habits of eye care professionals during the time frame of false advertising claims, September 2004 through January 2005, and should therefore be excluded from evidence.[6] While it is certainly true that a survey conducted some months after the false advertising ended may not be as probative as one conducted during the promulgation of such claims, the Court cannot conclude that such a survey has no value in assisting the fact-finder on the issue of causation. The objections as to the implications of the timing of the survey go more to the weight of the evidence than its admissibility. Accordingly, JJVC's motion to exclude Johnson's report is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for contempt is denied, Defendant's motion for partial summary judgment is denied, and the parties' motions in limine are denied. The parties shall appear for a final pre-trial conference on October 19, 2006 at 4:30 p.m. and shall consult and make their submissions in accordance with the timetable established by Pre-

---

[6] JJVC also objects that Johnson never showed or described the false advertising claims to participants, but instead relied on their memory to recall the respective claims. The Court finds that this objection goes more to the weight of the evidence than its admissibility.

Trial Scheduling Order.

    SO ORDERED.

Dated: New York, New York
     July 27, 2006

                                        LAURA TAYLOR SWAIN
                                        United States District Judge

Copies mailed 7/27/06
Chambers of Judge Swain