UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

JOHNSON & JOHNSON VISION
CARE, INC.

                Plaintiff,

      - against -

CIBA VISION CORPORATION,

                Defendant.

------------------------------------------------------------ x

04 Civ. 7369 (LTS)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas   New York NY 10036

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- x
JOHNSON & JOHNSON VISION
CARE, INC.

                04 Civ. 7369 (LTS)

          Plaintiff,

       - against -

CIBA VISION CORPORATION,

          Defendant.
----------------------------------------- x

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiff Johnson & Johnson Vision Care, Inc. ("JJVC") respectfully submits this memorandum of law in opposition to defendant CIBA Vision Corporation's ("CIBA") motion for judgment as a matter of law.

### Argument

CIBA's motion for judgment as a matter of law notes that the Second Circuit Court of Appeals has observed that an award of profits is "rarely" given in false advertising cases. (Memorandum of Law in Support of CIBA's Motion for Judgment as a Matter of Law ("CIBA Br."), at 3). Whether or not that is true, it is certainly the rare case where the author of the very study on which an establishment claim is based provides a defendant with notice that his work does not support the claim and, in response, the defendant does not take immediate reaction to pull back from the market all claims predicated on that study. And it is rarer still for an advertiser who is enjoined from making a false claim to make essentially the same claim using a

KL3 2573105.1

- 2 -

semantic sleight of hand. Based on these facts alone, the jury here could certainly find that this is just the kind of rare case where an award of profits is appropriate.

CIBA acknowledges that "[t]he standard for a motion for judgment as a matter of law is the same as for summary judgment under Fed. R. Civ. P. 56." (CIBA Br. at 1 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (U.S. 2000); *This is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998)). Further, in entertaining a motion for judgment as a matter of law, CIBA correctly states that "the court must draw all reasonable inferences in favor of the nonmoving party." (CIBA Br. at 1-2 (citing *Reeves*, 530 U.S. at 150)). In light of these standards, it is clear that CIBA's motion should be denied because it is grounded in the same two arguments that CIBA already raised in support of its unsuccessful motion for partial summary judgment, which was denied by the Court in a July 27, 2006 Opinion & Order. As the Court held:

> Defendant argues that it is entitled to partial summary judgment because Plaintiff cannot prove that Defendant's violations of the Lanham Act and of the Court's December 2004 injunction were willful or made in bad faith, and that Plaintiff is unable to demonstrate that it suffered any damages on account of Defendant's activity and thus cannot establish the requisite "general right to damages" in connection with its action to recover profits. However, when the record is read, as it must be on a summary judgment motion, in the light most favorable to Plaintiff, it is clear that there is sufficient evidence as to each of these issues to support a reasonable factfinder's verdict in Plaintiff's favor.

(*Id.* at 8-9).

With respect to JJVC's "general right to damages," CIBA is simply wrong that "JJVC's only evidence of harm it has suffered is a statement allegedly made to JJVC's Vice President of Sales, David Smith, by a single doctor." First of all, Mr. Smith testified — based on his experience as Vice President of Sales and his duties in that capacity — about the general

nature of the reputational harm that he believed that JJVC suffered; he then further testified about a specific instance of a meeting with an ECP to illustrate this testimony.

More fundamentally, JJVC's damages expert, Basil Imburgia, provided testimony on the harm suffered by JJVC because of the false advertising, which supports JJVC's general right to damages. Mr. Imburgia's analysis was not merely a calculation of CIBA's ill gained profits. Rather, it assessed the profits that CIBA made *at JJVC's expense*, which is a measure of the harm suffered by JJVC because of CIBA's false advertising. Mr. Imburgia made this point in his complete answer, which is only partially quoted in CIBA's brief (at 6):

> Q. One of the things that I think you argue in your expert report is that Ciba's launch of $O_2OPTIX$ and the false advertising was hurting Johnson & Johnson's sales. Right?
>
> A. Well, the — no, I never said that in my expert report. My expert report quantifies losses due to the false advertising in dollar amount of $2.3 million of revenues due to the false advertising. *I said that this calculation also represents the amount of losses of revenue from Johnson & Johnson because I accounted for and reduced the damages to exclude false advertising that was at the expense of [] any of the other competitors, not Johnson & Johnson. So we're talking about a $2.3 million number of revenues lost by Johnson & Johnson.* And that's what my report identified.

(Trial Tr. at 370-71 (emphasis added)).

As for CIBA's argument that JJVC has not established that CIBA's conduct was intentionally deceptive "at the time the claims were made, either in the original or the revised sales aid" (CIBA Br. at 8), the Court already found otherwise in rejecting CIBA's summary judgment motion. As the Court held:

> [A] reasonable factfinder could determine, on the basis of evidence that Defendant's in-house staff requested permission from Dr. Hill to use certain text regarding oxygen transmissibility, altered the text and presentation to depict 90 Dk/t as a "critical minimum" without clearing the change with the author, and refused to withdraw the advertising claim for some weeks after Dr. Hill had repudiated it, that Defendant's promulgation of that false claim

- 3 -

was willful or done in bad faith. . . . Similarly, there remain genuine issues of material fact regarding willfulness and bad faith in connection with Defendant's use of its claim that 75% of study participants preferred, or "selected," $O_2OPTIX$ "over" Plaintiff's product.

(July 28 Opinion & Order at 9).

Finally, CIBA concedes that proof of intentional deception gives rise to a rebuttable presumption of consumer confusion. (CIBA Br. at 6-7). Thus, even if CIBA were correct that JJVC has not presented sufficient evidence of *actual* consumer confusion, CIBA's motion for judgment as a matter of law should be denied because JJVC is not required to make such a showing.

## Conclusion

For these reasons, the Court should deny CIBA's motion for judgment as a matter of law.

Dated: New York, New York
February 12, 2007

Kramer Levin Naftalis & Frankel LLP

By: _____
Harold P. Weinberger (HW-3240)
Norman C. Simon (NS-1407)

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

Attorneys for Plaintiff
Johnson & Johnson Vision Care, Inc.